Next case will be 063184, Adamo v. The Merit System Protection Board. Mr. Hendricks Good afternoon. Merle Hendricks representing Ms. Adamo. This case involves a serious violation of Ms. Adamo's due process rights by the Merit Systems Protection Board. As a former employee of the Merit Systems Protection Board, I was surprised when this case came into my office and I looked at the fact that a hearing hadn't been granted below. It did not represent the petitioner at that time, she was pro se. The board is required by due process and fundamental fairness to take a look at her allegation that her resignation was involuntary, and if she makes a non-frivolous allegation, and that's what this court has continuously held, a non-frivolous allegation, that she's entitled to have a due process hearing to present evidence. Ms. Adamo had five witnesses lined up, she had evidence she wanted to present, she had discovery she wanted to make of the agency to prove that they had in a sense been engaged in a patterning practice of a hostile work environment. This was a mixed case down below, there was an EEO component to it, there was a, I think a bona fide basis to conclude that there was a hostile work environment. She endured this hostile work environment for some 15 months. Endured? Endured. Endured. Endured this for 15 months. She repeatedly went to her supervisors and tried to get her co-workers to lighten up, and nothing was done. She made repeated attempts to have this done, and nothing happened. There's a large body of fact that is not properly germane to this case that would have been come out at a hearing, had a hearing been granted. But what if all of these allegations, if proved, don't overcome the fact she voluntarily resigned? Don't amount to a constructive removal? Well, then there would be no jurisdiction, but that would be after a hearing. If proven after a hearing, the board has simply skipped a step. The board decided to go ahead and analyze her allegations without providing her the benefit of hearing, without allowing her to produce the testimony she wanted to produce, without giving her a chance to do the discovery she wanted to do,  But the testimony, the evidence, the evidence would have supported, arguably, the allegations. But didn't the A.J. find that the allegations didn't constitute truth? We believe he mischaracterized the allegations. He severely mischaracterized the allegations. He specifically mischaracterized the fact that this woman was reduced to a place where her doctor had to advise her that she could not continue, that her health was now at issue. She ended up taking substantial amounts of time off. The last three months that she worked for the agency, she was on a work-at-home only basis because she couldn't put up with the kind of day-to-day abuse that her colleagues were putting her under. Your Honor, we don't have time to get into the specifics of what was done. But the problem is the specifics are exactly what it's about, because it's not a conclusory allegation that doesn't do the trick. The question is whether a reasonable person would find this intolerable. What was it about the conditions that she worked under that would cause a reasonable person to feel that she had no avenue other than resigning? There were constant demeaning and belittling comments. She was excluded from information she needed. She was often put under very short deadlines because they hadn't bothered to share with her information that she was required to produce. They put her in a situation. It was a no-win situation. The attempt was to run her out of that position. These two colleagues were resentful of the fact that she had gotten this job. She had been promoted up into a job where she was now their colleague instead of working for them, and they wanted to run her out of that job. And they were successful in doing that, and the agency managers above them allowed it to happen. What was the evidence that they were deliberately trying to run her out of the job? They were treating her in ways that were substandard from a professional basis. A professional office should operate in sort of a collegial manner. When people request information, it should be made available to them. When they're asked to address it, they should be treated with respect. She was not treated with respect. She was not given... They blocked her new position. They blocked the writing of a new position description so that they wouldn't have to allow her to do the new duties that she was supposed to be assuming. They refused to allow her to assume her full duties. They criticized her performance in ways that were not fair and not consistent with what her conduct actually was. What we have here is a simple case of a hostile work environment, and our firm does hostile work environment cases, and these allegations are significant. And whether they would have been proven after a hearing is something we can only engage in conjecture here. But the board decided to use conjecture instead of resorting to the hearing as they were required to do. That's a violation of due process. She was entitled to that due process. There are rules that the board operates under. It has jurisdiction to determine whether this was involuntary or non-involuntary, and instead of using that, the judge wrote, I think it's a 10 or 12-page decision, instead of holding a hearing. He should have held a hearing. If he holds a hearing and comes to a conclusion, then I don't think this is a Federal Circuit case. This is a Federal Circuit case because he made an obvious error. He skipped a step in the process that was supposed to be... So if we send it back for the reason you state, she gets her hopes up, and the AJ does the same thing and he changes a few words, and maybe, okay, they get that hearing and he doctors it up, and you've simply churned the system. You get the same result. Well, that's a very skeptical view of due process. I think due process is an entitlement where I get to step up and have my day and chance. Do I get a guarantee? Is fundamental fairness a guarantee of a particular result? We all went to law school. We know the answer is no. But it is a chance to present your case and to have a new impartial judge, and I'm not suggesting that this JJ or any other JJ with the board is biased against employees. I think he simply missed a step in the analysis. And in writing up his opinion, it's very clear that he went through painstaking to take a look and take what she had alleged, turn it more into what the agency said it was, and then find that it wasn't a non-frivolous allegation. I think a non-frivolous allegation with the kind of specifics that she provided should have been plenty to trigger the requirement for a due process hearing. The Supreme Court has consistently held that the board and the process it goes is an important entitlement for federal employees that due process is something that is to be recognized and something that is not to be treated lightly. I think here the board skipped over that. What we're asking for is a remand to the board for a hearing. The case deserved a hearing. Ms. Adamo had five witnesses who were ready to testify concerning the allegations. The decision. You're repeating yourself. Do you want to go on to another point? Sure. The MSPB admits the right standard but doesn't follow the standard. The board bypassed the hearing and then proceeded to analyze the allegations without affording a hearing. We believe that this court has no option but to remand this case to allow her to testify. All right, why don't we hear from the government and then you can come back on the rebuttal. Ms. Friedman. Good afternoon. May it please the court. Most resignations are not in the board's jurisdiction and this is because that there is a strong presumption that actions such as resignations are voluntary. How does that relate to whether the board skipped a step? Well, in order to rebut this presumption, the appellant would have had to make non-frivolous allegations. That is, everything that she said is true. We hold that everything that she said is true and that those allegations would rebut this demanding and narrow standard to rebut this presumption of voluntariness. Weren't they non-frivolous? No, they were frivolous. In other words, they were silly, not real. Is that your view? Our view is that it does not rise to the type of non-frivolous allegations that would rebut the presumption of voluntariness. But you accept it? You accept everything she says? Even if you accept everything that she said was true, individually or taken in the aggregate, did not amount near to the type of cases where the board in this court has found non-frivolous allegations to rebut the strong presumption of voluntariness. How would you characterize the environment she worked in? It might have been unpleasant, subjectively to her. But in order to prevail, she would have had to allege facts that would show a severe and pervasively abusive atmosphere. She would have had to show, under the Fruchoff standards, that the agency imposed the terms of her resignation, that she had no other alternative but to resign, and that the resignation resulted in the improper or coercive acts of the agency. I'd like to review some of the allegations that she made to the board and show that these allegations were, in fact, not non-frivolous allegations. In other words, they were frivolous? Yes. Thank you. Two negatives is a positive. That's correct. Ms. Adamo's first allegation is that Dr. Muniz interfered with her duties by cutting her out of the budget process and giving erroneous information on personnel matters. Why is that frivolous? When she walked in in the morning, they didn't smile at her. That's frivolous. But this was a proper... This is job-related, sort of. It's job-related, but it's not an improper act of the agency. When you look at the records, you see that the evidence shows that the budget and personnel matters in this organization were not within her province. We see on page 105 of the appendix that that was the province of the acting director of the organization and the administrative director, Dr. Muniz. Doesn't that have to come out in a hearing? Well, it has to at least be alleged that this was in her province, it interfered with her duties, but she did not make that allegation. Also, she was very upset about it, but the agency, rather than trying to make things worse, there is evidence in the record that Dr. Boyer nevertheless furnished her with the budget when she asked for it. And in fact, in the following year, Dr. Muniz asked for her input for the following year's budget, and if you look at the appendix and we see what her job duties were,  is only part of her duties if it is asked by Dr. Muniz and Dr. Boyer. So, thus, disagreement about the administrative organization does not equate with coercion necessary to show involuntary resignation. The next thing that she alleges is that Dr. Muniz and Dr. Boyer created a hostile working environment, and she specifically points to one situation where Dr. Muniz privately rebukes her about her travel budget. But again, a budget is a legitimate work subject, and even if it's discussed in a harsh manner, this does not make a reasonable person. You have to look through the eyes of a reasonable person, a person who is objective, not somebody's subjective feelings. And since it was a legitimate work subject to discuss, then a reasonable person wouldn't have resigned because he was privately rebuked. Her allegation that Dr. Muniz and Boyer made erroneous negative comments about Ms. Adamo is not reflected in the very documents that she submitted to back up that claim. And we see that management indeed respected her work and the work at the center. There's a memo written by Dr. Boyer, one of the people that she claims was responsible for a hostile working environment, that says that he knows that the best interest of the center is at her heart, and he stressed that she should continue to do the work that she had been doing very well before. And it leads me to her next allegation, which is she claims that she suffered a very poor performance appraisal. But when you look at the performance appraisal on page 97 of the appendix, you see that she was given two outstandings in two critical elements of her job, and she was given three fully successfuls in other critical elements of her job. And the narrative that went along with her performance appraisal was very complimentary for the most part. So she does not bear up her allegations, and it certainly does not rebut the strong presumption, this demanding and narrow standard to rebut the presumption of voluntariness. She also claims that there was no formal position description and that this greatly bothered her. But she did admit to receiving $20,000 in an increase in salary along with doctors. And then Dr. Boyer, knowing that there were some animosities between Dr. Muniz, who was on the same level as her, gave her a list, a description of all her duties so that there shouldn't be any hard feelings and that there shouldn't be any conflict between what the roles of the jobs had. Now, Ms. Adamo stresses that, well, she alleges that stress from work required her to take substantial leave and left her in a depression and now claims that her doctor advised her to resign. But she claimed, and we could see that in her own submission at page 71 in the appendix, that her job by its very nature was stressful. Her claim that she took a substantial amount of leave is belied by the evidence that she, again, supplied. She presented only eight days of sick leave and some of that time was spent taking care of a relative. Indeed, we see that there was a substantial period that elapsed between the letter of her resignation, which was in October, and the actual date of resignation. And this is another factor to look at in determining that there was no involuntariness here. Now, the cases where there were non-frivolous allegations of hostile work environment found by the board or this court is where truly egregious actions of the agency objectively took away all choice but for that person to resign. And some of the things that happened to these employees is that the employees' key duties were all taken away. The employee was forced to work without compensation. The agency threatened that it would take an action that couldn't possibly be substantiated. The agency tells the employee that the employee should resign. The agency gives time pressures for the employee to resign. The agency supervisors publicly rebukes the employee, usually in front of subordinates, and makes the employee suffer unfounded disciplinary actions or poor performance ratings and performance improvement plans, or the agency ignores safety issues that the employee complains about so that the employee's life or safety are at risk. Now, none of these things happened. None of these things were alleged by Ms. Adamo. None of the things that she alleges we submit imposes the terms of her resignation, even if you take everything she says is true, that the circumstances certainly did permit her alternatives to resignation and that there was no showing by the agency acts, which were legitimate business acts by the agency, that would have been coercive or improper. How many of these involuntary resignation cases does the Board get every year? I'm not certain, Your Honor, but if you'd like me to find out, I'd be happy to. No, that's all right. I just thought you might know off the top of your head. No, I don't. I'm sorry. But for these reasons and the ones expressed in our brief and the brief of the intervener, the Board's decision should be affirmed. All right. Thank you. Mr. Hendricks? At least the Court would like to respond to some of the points that were raised. Counsel for the Board talked about her being cut out of the budget process. Her being cut out of the budget process was very important. She was a co-equal who had an area of responsibility. She needed a certain amount of money to make that happen. We're all familiar with federal appropriations. You don't get the money to do what you need to do. You can't possibly accomplish your goal. In her PD, she would have had, had it been written, a guarantee that she would be able to have input into that budget process. She didn't get input into the budget process the first time, and only because she complained was she allowed any input into the budget process the second time, and still they ignored her input and gave her funds that were not sufficient. The counsel for the MSPB talks about the evidence shows. Well, I submit to you we don't know what the evidence would have showed because we don't have a hearing, and that's the problem with this case. The problem with this case is point by point, if you go through her allegations, we don't know what the evidence would have showed because we didn't have a hearing. It's not recorded in a transcript. The evidence wasn't presented in a way that's made a full and fair record here. But the evidence would have tended to prove what she alleged, right? Right, that she was cut out of the budget process, and this kept her from performing her duties. This caused stress on her and resulted in her health deteriorating and her being reduced to a place where she couldn't think straight, and she couldn't even bear to come to work on a regular basis. That's also part of the allegations, which they conveniently don't want to mention. This was a case where it was hard for her to get dressed to come to work. She went from loving her job and really looking forward to going every day to she just couldn't hardly physically stand to go there anymore, and that's why the resignation came about the way it did. That's why she took the resignation and said, I'm going to resign, I'm going to work at home for three months, and then I'll resign. She resigned to try to find another job, which she was unable to find. She went through a substantial period where she didn't have employment. She was forced out of the door, and there's no evidence. The evidence would show that she was forced out of the door had a hearing been held. But she didn't produce any evidence in connection with the jurisdictional question to prove that she was forced out, did she? She made allegations that were non-frivolous. What was the allegation? The allegation is that she was not permitted to do her job. In other words, we're talking about the same things that you listed before, the budget process and all that, and we're supposed to infer from that that she was deliberately forced out? Yes, you're supposed to infer from that. She was a pro se employee going forward. They said, tell us why you resigned, and she put forth that she could no longer face the inner personal pressure she was under by these two people who were constantly demeaning her and making belittling comments. We would have had evidence of that had there been a hearing, and that's the way the process is supposed to work. It's supposed to work with the hearing. There's supposed to be a chance for her to make a due process showing. Her performance appraisal turned out to be fully successful. There was some positive language in it, but it was well below what it should have been, and it was well below anything she had received before then, and it was not fair. It was not a fair rating, and when she tried to appeal it, she ran into a stone wall. She was not allowed to have any chance to appeal it or to take that to a higher level. There was no PD. Having no position description when you've just moved into a new position, the agency has reorganized it. Your position is a new position. If we were to hold that there had to be a hearing under these circumstances, why wouldn't that mean that every time an employee is having difficulties in the workplace in conflict with coworkers that there is enough evidence to require a hearing on an involuntary resignation theory? Why is this different from the run-of-the-mind case? That's an excellent question, Your Honor, and one of the things that makes this case different is the fact that she had these physical symptoms that caused her to need to. Her doctor recommended that she not return to the work environment. She could not return to that environment because of the additional levels of stress, the stress that was put on by a hostile work environment. This is an archetypal claim of a hostile work environment. It was originally pursued in the EEOC until the agency said, hey, you should probably be pursuing this at the MSPB, and as soon as she filed at the MSPB, they filed a motion to dismiss, and that's how we got to this case. They took her out of the EEO process. As a pro se employee, they said, you should file this at the MSPB. The agency's counsel said that to her. She took them at face value, filed the mixed case at the MSPB, and then they dismissed it. So she's never had a hearing on these issues. Whether or not she can ultimately prevail is something that we don't know yet, but there was no opportunity to present the evidence that she needed to present. In conclusion, I'd just like to wrap up with a couple of points. First of all, she made non-frivolous allegations that her resignation was involuntary. I think the board is doing tricks to find these allegations not to be frivolous. They are non-frivolous. They are very specific. They're not, you know, my boss was mean to me. There's very specific things that are alleged, and they would have been subject to proof enough to satisfy the standard. The board failed to hold a hearing as required under this court's decisions in Garcia and Cruz. You look at the Garcia case. This case is a much stronger case than Garcia was in terms of needing to hold a hearing. The board deprived Ms. D'Addamo of important due process rights, her right to have a hearing, her right to have witnesses, and her right to have discovery of various people in the agency who did not want to cooperate with her. The remand to the board is required for a hearing to be held. Thank you very much. Thank you. Agent submitted.